IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT DELAYO,

    Plaintiff,

v.                                                                     Civ. No. 22-165 MIS/GBW

NEW MEXICO CORRECTIONS
DEPARTMENT, *et al.*,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CORECIVIC, INC.'S AMENDED MOTION FOR A PROTECTIVE ORDER

THIS MATTER comes before the Court on Defendant CoreCivic, Inc.'s ("CoreCivic") Amended Motion for a Protective Order. *See doc. 80*. Having reviewed the Motion and its briefing (*docs. 83*, *84*), the Court GRANTS the Motion in part and DENIES the Motion in part.

**I.  BACKGROUND**

On March 4, 2022, Plaintiff filed a Complaint against Defendant CoreCivic and Defendants New Mexico Corrections Department ("NMCD"), Northwest New Mexico Correctional Center ("NWNMCC"), Wexford Health Sources, Inc., TridentCare Imaging, Dr. Dieter W. Dennig, Dr. Nicholaus J. Kuehn, and Dr. Benjamin T. Huang. *See doc. 1* at ¶¶ 7-15. Plaintiff brings claims for medical negligence and cruel and unusual punishment based on Defendants' alleged acts and omissions during the

course of medical treatment Plaintiff received for back pain while detained at Northwest New Mexico Correctional Center. *See id.* at ¶¶ 57-103. Defendant CoreCivic filed a Motion for Judgment on the Pleadings on July 20, 2022. *See doc. 51.* Plaintiff filed a response to Defendant CoreCivic's Motion for Judgment on the Pleadings on August 19, 2022, *see doc. 58*, in which he attached as an exhibit a proposed amended complaint containing allegations additional to those in his original Complaint, *see doc. 58-1*.[1]

Defendant CoreCivic filed the instant Amended Motion for Protective Order ("the Motion") on September 29, 2022, requesting the Court to prevent Plaintiff from deposing witnesses for Defendant CoreCivic "as to Plaintiff's new allegations in his proposed First Amended Complaint . . . unless and until the Court grants Plaintiff leave to file [his amended complaint] and it becomes the operative Complaint in this case." *Doc. 80* at 1. Specifically, Defendant CoreCivic requests a protective order preventing Plaintiff from deposing CoreCivic's witnesses as to the following four topics:

> [(1)] [T]he trafficking of drugs into [NWNMCC]; [(2)] Plaintiff's Hepatitis C and associated cirrhosis of the liver and treatment for these conditions; [(3)] the 'number of inmates infected with Hepatitis C/cirrhosis of the liver but not recovering [sic] treatment nor the number of inmates like Plaintiff who needed, grieved and begged for medical treatment and were not getting the necessary medical care they so desperately needed' and its alleged effect on [NWNMCC's] accreditation; [and] [(4)] the presence/absence of CoreCivic policies and procedures, and that the Warden should have "provided leadership and taken responsibility."

---

[1] Plaintiff filed an Opposed Amended Motion to Amend Plaintiff's Complaint on September 27, 2022, *see doc. 78*, which attached a proposed amended complaint nearly identical to the proposed amended complaint attached to Plaintiff's response to Defendant CoreCivic's Motion for Judgment on the Pleadings, *see doc. 78-1*.

*Id.* at 1-2 (quoting *doc. 58-1* at ¶¶ 56–66).  Plaintiff filed a response on October 4, 2022. *See doc. 83*.  The Motion was fully briefed on October 7, 2022, *see doc. 86*, with the filing of Defendant CoreCivic's Reply, *see doc. 84*.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Evidence is relevant if it has any tendency to make a material fact more or less probable.  Fed. R. Evid. 401.  Relevancy is broadly construed and discovery should be permitted on "'any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1115-16 (D.N.M. 2019) (quoting *State Farm Mutual Auto. Ins. Co. v. Fayda*, 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. 2015)).  However, in determining whether information is discoverable, the Court should "focus on the actual claims and defenses involved in the action."  Fed. R. Civ. P. 26 advisory committee's note to 2000 amendment.  Information "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  The Court, on motion or *sua*

*sponte*, "must limit the frequency or extent of discovery" if the discovery sought is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Federal Rule of Civil Procedure 26(c) permits the Court, with good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Issuing a protective order is required when the party seeking discovery attempts to obtain information outside the scope of discovery." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 6 (D.D.C. 2016) (citation omitted). However, the burden is on the moving party to demonstrate good cause for the requested protective order. *Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 721 (D.N.M. 2017) (citations omitted); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

### III. ANALYSIS

Under Rule 26(b), as explained above, discovery is limited to that which is relevant and proportional to matters that bear on, or that reasonably could lead to other matters that could bear on, any party's claim or defense as the lawsuit currently exists. Therefore, to prevail on the instant Motion, Defendant CoreCivic bears the burden of proving that the topics at issue fall outside that scope of discovery as defined by the claims contained in Plaintiff's original Complaint or any Defendant's defenses to those claims.

### A. Topics 1-3: Topics Raised in Paragraphs 56-64 of Plaintiff's Proposed Amended Complaint

Defendant CoreCivic argues that the Court should issue a protective order preventing Plaintiff from deposing Defendant CoreCivic's witnesses as to three broad topics discussed in paragraphs 56-64 of Plaintiff's proposed amended complaint: 1) the trafficking of drugs into NWNMCC, 2) Plaintiff's status as being positive for Hepatitis C and his related cirrhosis of the liver and medical treatment, and 3) the number of other inmates infected with Hepatitis C but not receiving treatment and the reporting of that figure during a 2020 corrections standards compliance reaccreditation audit.  Defendant argues these topics are beyond the scope of discovery because they are "wholly unrelated to Plaintiff's operative Complaint" and therefore not relevant to the matters raised in Plaintiff's Complaint and disproportionate to the needs of this case.  *See doc. 80* at 3-4.

   i.   Topic 1: The Trafficking of Drugs into NWNMCC

The topic of alleged drug trafficking into NWNMCC is not relevant to the claims and defenses presently in this action and therefore is outside the scope of discovery. Defendant CoreCivic argues that questions pertaining to drug smuggling into NWNMCC are not relevant because the proposed amended complaint's allegations about how osteomyelitis may be contracted and about drug trafficking into NWNMCC cannot be connected to "the back injury upon which [the] operative Complaint is premised (or any other injury)."  *Doc. 80* at 8.  In addition, Defendant argues that "no

5

defendant has opened the door as to [the topic of drug smuggling] through discovery." *Id.* In response, Plaintiff argues that the allegations at issue relate to "infection and one of the possible ways to get [an] infection" during a time that visitation restrictions were in place at NWNMCC, a topic put at issue in Plaintiff's original complaint. *See doc. 83* at 3 (citing *doc. 1* at ¶¶ 48, 52, 53).[2] The Court finds that, while information about how osteomyelitis is contracted falls within the scope of discovery—as defined by Plaintiff's original Complaint—information about alleged drug smuggling into NWNMCC does not.

First, the Court agrees with Plaintiff that the Complaint puts at issue "infection and . . . possible ways to get [an] infection." *See doc. 83* at 3. It contains allegations supporting a theory of causation for Plaintiff's injury in which Plaintiff fractured his back and subsequently contracted a bacterial infection in his thoracic spine. *See, e.g., doc. 1* at ¶¶ 47, 48. Therefore, information related to the means by which an individual may contract osteomyelitis is discoverable. However, Plaintiff's allegations that his injuries were caused by a bacterial infection, without more, are not sufficient for Plaintiff to undertake a fishing expedition into any possible means by which he may have contracted a bacterial infection and do not sweep the topic of drug trafficking into NWNMCC within the scope of discovery. The Complaint does not contain any

---

[2] This citation has been updated to reflect the Court's understanding that Plaintiff intended to cite his Complaint (*doc.* 1) as opposed to Defendant CoreCivic's Answer to Complaint (*doc.* 10).

allegations that would form a logical bridge between Plaintiff's infection that caused the injury at issue and alleged drug smuggling into his prison facility; for instance, he does not allege that he used intravenous drugs, or that intravenous drugs could be a vector for the type of bacterial infection he contracted.

Although Plaintiff argues that the topic of drug smuggling into NWNMCC falls within the scope of discovery because Defendants plan to assert his drug use as a defense, the Court finds that Defendants' answers and discovery responses do not bear out that argument at this stage of the litigation. No Defendant asserts in an answer that Plaintiff's injury was caused, wholly or in part, by his drug use while incarcerated. Although it is true that Defendant NMCD asserts in its response to Plaintiff's Interrogatory No. 5 that Plaintiff used intravenous drugs while incarcerated, *see doc. 83-1* at 4, this response was provided in answer to an interrogatory from Plaintiff that requested "the details of how [the New Mexico Department of Corrections] ensures that drugs are not brought into NWNMCC by correction officers, staff, and employees, including but not limited to audits, disciplinary action, and criminal prosecution," *id.*, and the response did not make any assertions concerning the effects of Plaintiff's alleged drug use on his health. Plaintiff also argues that Defendants have raised Plaintiff's drug use as a defense because "counsel for NMCD, during a phone call with [Plaintiff's] counsel on August 22, 2022, brought up Plaintiff's drug use as contained in his medical records . . . [and] NMCD has requested the discipline [sic] history from

Plaintiff." *Doc. 83* at 2.  This argument falls short, though, because Plaintiff offers nothing to connect Defendant NMCD's requests for Plaintiff's disciplinary history and discussion about Plaintiff's drug use on a phone call (the exact contents of which are not before the Court) to a defense that Plaintiff's intravenous drug use was the means by which he contracted thoracic osteomyelitis, except for his own speculation.  *See doc. 83* at 8 (speculating that "Defendants will *likely* make arguments about Plaintiff's drug use.  Otherwise, why would they be discussing Plaintiff's disciplinary history and the statements in the medical records concerning drug use?") (emphasis added).  Therefore, at this stage of discovery,[3] the Court will grant Defendant CoreCivic's motion as to the alleged trafficking of drugs into NWNMCC.

> ii.  Topic 2: Plaintiff's status as positive for Hepatitis C, his associated cirrhosis of the liver, and the treatment he received for these conditions.

The topics of Plaintiff's status as being positive for Hepatitis C, his associated cirrhosis of the liver, and the treatment he received (or did not receive) for these conditions are relevant, proportional, and subject to discovery.  Defendant CoreCivic argues that Plaintiff's Hepatitis C diagnosis, cirrhosis of the liver, and treatment for those conditions, are impermissible topics of deposition questions for its fact witnesses because Plaintiff's Complaint does not allege that he is positive for Hepatitis C or that

---

[3] Of course, should Defendant NMCD or any other Defendant raise Plaintiff's drug use as a defense, either in their discovery requests or responses or by amending their pleadings, this topic would then fall within the scope of discovery.

8

he has associated cirrhosis of the liver; does not "indicat[e] . . . how the alleged denial of treatment of Plaintiff's medical conditions was caused by CoreCivic, as Plaintiff only refers to [Defendant NWNMCC] (not a proper defendant), Dr. Dennig, and 'other Wexford health staff'"; Plaintiff otherwise does not connect these allegations to "the back injury upon which [his] operative Complaint is premised"; and "no defendant has opened the door to . . . these issues . . . through discovery." *Doc. 80* at 8. The Court disagrees.

As set forth above, Plaintiff is pursuing claims based on Defendants' alleged medical negligence and failure to provide medical treatment based on the medical treatment he received at NWNMCC for a back injury. *See, e.g., doc. 1* at ¶ 55 (claiming that Defendants delayed provision of medical treatment to Plaintiff based on their knowledge of his release date from prison and because "any outside care such as [an] MRI or CT scan would have to be paid by them"); *see generally doc. 1* at 10-17. Information about Plaintiff's complete medical history during the time period spanning his allegations—including information pertaining to other medical conditions Plaintiff may have had concurrently with his back injury and medical care that Plaintiff either did or did not receive—is relevant to those claims. *Cf. Phillips v. Tiona*, Civil Action No. 10-cv-00334-PAB-KMT, 2011 WL 587311, at *2 (D. Colo. Feb. 9, 2011) (finding that information about "all of Plaintiff's medical conditions occurring at the time of the factual allegations in the complaint" was relevant where his complaint contained

allegations that correctional facility personnel withheld or changed his medication); *Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1211 (D.N.M. 2019) (affirming a court's determination that studies about a prison healthcare contractor's provision of medical care for medical conditions different than those at issue were relevant because the studies were "germane to [the plaintiff's] claims regarding allegedly negligent or deliberately indifferent health care practices" and could "be considered in determining the pervasiveness or severity of the conduct of [the defendants'] officials and may establish the general environment surrounding health services at [the prison facility at issue]").

Furthermore, Defendants NMCD, Wexford Health Sources, Inc., and Dieter Dennig each assert the affirmative defense that "the treatment provided to Plaintiff was in accord with the skill and care ordinarily used by health care providers under similar circumstances, considering the circumstances and locality involved," *see, e.g.*, *doc. 21* at 9, which puts at issue all healthcare provided to Plaintiff, not just the treatment he received for his back pain. The Court therefore rejects as overly restrictive Defendant CoreCivic's assertion that Plaintiff should be limited to deposition questions pertaining to his alleged back condition and associated treatment.

Having found that Plaintiff's Complaint and the defenses of Defendants NMCD, Wexford Health Sources, Inc., and Dieter Dennig put at issue the medical treatment Plaintiff received or did not receive while incarcerated at NWNMCC, the Court rejects

Defendant CoreCivic's argument concerning Plaintiff's failure to attribute fault to Defendant CoreCivic for the alleged denial of medical treatment. This argument is inconsistent with the text of Rule 26(b), which plainly states that discoverable information is "any nonprivileged matter that is relevant to *any* party's claim or defense and proportional to the needs to the case." Fed. R. Civ. P. 26(b) (emphasis added). Therefore, the topics of Plaintiff being positive for Hepatitis C, his cirrhosis of the liver associated with that diagnosis, and the treatment Plaintiff received for those medical conditions, are all permissible topics for deposition questions for Defendant CoreCivic's fact witnesses.

Moreover, the Court is not persuaded that permitting Plaintiff to depose Defendant CoreCivic's fact witnesses as to these topics poses an undue burden to Defendant CoreCivic. Defendant CoreCivic's sole argument for undue burden is that "these allegations are not part of the operative Complaint." *Doc. 80* at 8. As discussed above, the Court disagrees that these topics are not related to the operative Complaint. Moreover, where a party raises only general concerns as to the burden posed by contested discovery and does not provide any further evidence from which the Court may "discern . . . specific harm" that would befall the party from producing the requested discovery, the Court will conclude that the party has not shown that it would suffer an undue burden. *Bhasker*, 361 F. Supp. 3d at 1120 (discussing *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197 (D.N.M. 2005)). Defendant CoreCivic has not made

11

any specific allegations from which the Court could discern a specific harm arising from having to prepare fact witnesses for deposition questions related to the topics at issue. *See generally doc. 80*.  Therefore, the Court finds that these topics are not unduly burdensome and within the scope of discovery.

          iii.      Topic 3: NWNMCC's accreditation and the 2020 Corrections Standards Compliance Reaccreditation Audit

The topic of NWNMCC's accreditation is only partially relevant and discoverable.  Defendant CoreCivic argues that the topic of NWNMCC's accreditation is not relevant to the issues raised by Plaintiff's Complaint and that no Defendant's discovery responses or requests opened the door to the issue of NWNMCC's accreditation.  *See doc. 80* at 6.  In response, Plaintiff argues that the topic is relevant because Plaintiff's Complaint alleges that "Defendant NMCD failed to abide by [its] contracts and audits," which are "done in order to obtain accreditation."  *See doc. 83* at 9. Plaintiff also argues that the topic is relevant because NMCD "disclosed in [its] initial disclosures [that an] audit . . . was done for 2020 which contains factual errors and contains direct information about the HEP C program."  *Id.* (citing *doc. 83-3* at 2).  The Court partially agrees with Plaintiff's first argument and rejects the second.

The Courts finds that NWNMCC's accreditation is relevant and discoverable to the extent it bears on the medical treatment received by Plaintiff during the time period implicated by his Complaint.  The Complaint alleges that Defendant NMCD had a duty to "ensure that is contractors fully abide by their contracts and audits," *doc. 1* at ¶ 71,

12

and breached its duty through "negligent hiring, training, supervision, credentialing, evaluating, monitoring, or retention of healthcare employees, contractors, nurses, and physicians on staff; inadequate or inappropriate policies and procedures and audits of contractors and staffing; inadequate or inappropriate medical support and staffing," *see doc. 1* at ¶ 72. Whether NWNMCC lost its accreditation at any point during the time period relevant to the Complaint is evidence that has a bearing on the likelihood of whether Defendants employed adequate policies and audits related to the provision of medical care at NWNMCC and therefore is relevant.

On the other hand, the Court will grant Defendant CoreCivic's Motion to the extent it requests the Court to prevent Plaintiff from seeking discovery about "'the number of inmates . . . who needed, grieved and begged for medical treatment and were not getting the necessary medical care they so desperately needed' and its alleged effect on [NWNMCC's] accreditation." *See doc. 80* at 1-2 (quoting *doc. 58-1* at ¶¶ 60). Defendant CoreCivic asserts that the sub-topic related to the number of inmates not receiving treatment for Hepatitis C and its effect on NWNMCC's accreditation is only put at issue by Plaintiff's proposed amended complaint and not by the operative Complaint.[4] Plaintiff argues that this sub-topic is relevant because "NMCD disclosed in

---

[4] Plaintiff's proposed amended Complaint alleges that "there was a commission on accreditation for corrections standards compliance reaccreditation audit done and the person involved [on behalf of Defendant NWNMCC] did not disclose the issues with [Plaintiff]" related to his non-treatment for Hepatitis C based on his disciplinary infractions; "the number of inmates like [Plaintiff] who needed, grieved and begged for medical treatment and were not getting the necessary medical care they so

13

their initial disclosures the audit that was done for 2020 which contains factual errors and contains direct information about the HEP C program." *Doc. 83* at 9 (*citing doc. 83-3* at 2).

The Court finds that issues related to the number of inmates with Hepatitis C who were not receiving treatment, the reporting that was done about the number of such inmates and their health outcomes during the 2020 audit, and the effect of the same on NWNMCC's accreditation are not relevant to Plaintiff's claims. The Complaint does not allege that Plaintiff suffered any harm caused by NWNMCC's lack of accreditation, that any such lack of accreditation was due to a systematic failure to provide medical treatment to inmates with Hepatitis C, or that Plaintiff otherwise suffered any harm from a systematic failure to provide medical treatment to inmates with Hepatitis C. *See generally doc. 1*. Such allegations are contained in the proposed amended complaint that Plaintiff has not yet been granted leave to file. *See doc. 78-1* at ¶ 60.

Nor do NMCD's initial disclosures put this sub-topic at issue by implicating it in a defense. The portion of the Commission on Accreditation for Corrections Standards Compliance Reaccreditation Audit cited by Plaintiff and included in Defendant NMCD's initial disclosures states, *inter alia*, that the number of "[Hepatitis C] cases [at

---

desperately needed"; or "inmates who were transported to the hospital verses [sic] not," *see doc. 78-1* at ¶ 60.

NWNMCC] could be seen as high based on census" but "when factored against the facility mission of a substance abuse treatment facility the number is not unusual . . .." *Doc. 83-3* at 2. The audit also described a new Hepatitis C initiative and stated that the audit corrected an incorrect report that five inmate deaths resulted during the period of August 2019 through July 2020 based on new determinations about the circumstances under which such deaths occurred. *See id.* The Court finds that the excerpt of the audit that is before the Court does not constitute or otherwise implicate a defense on the part of Defendant NMCD or any other Defendant that would put at issue the number of inmates at NWNMCC who were positive for Hepatitis C, or whether that number had any effect on the facility's accreditation. Therefore, the Court will grant Defendant CoreCivic's Motion as to the sub-topic of the alleged non-disclosure of the number of inmates infected with Hepatitis C at NWNMCC but not receiving treatment during the 2020 reaccreditation audit.

### B. Topic 4: Topics Raised in Paragraphs 65-66 of Plaintiff's Proposed Amended Complaint

Finally, the topics associated with paragraphs 65 and 66 of Plaintiff's proposed amended complaint, which discuss: (i) the presence or absence of CoreCivic policies and procedures relating to the trafficking of drugs into NWNMC, and (ii) whether the Warden should have taken responsibility for and acted on a situation in which drugs were trafficked into the prison due to the lack of internal policies and procedures, *see doc. 78-1* at ¶¶ 65-66, are outside the scope of discovery. Defendant CoreCivic argues

15

that these topics are outside the scope of discovery because they "are more appropriate for a 30(b)(6) deposition, as they are within the specific knowledge of a corporation and not necessarily lay witnesses," and because "[t]he topics are based solely on new allegations in the proposed [amended complaint] that are in no way relevant to the operative Complaint," any Defendant's answer, or any discovery that has been propounded or responded to. *Doc. 80* at 10. Plaintiff argues that these topics do not require a 30(b)(6) witness because "Plaintiff is not asking specific questions as to the inner workings of the corporation but simply what is the witness's firsthand knowledge" about drug smuggling. *See doc.* 83 at 17. The Court agrees with Defendant CoreCivic.

The presence or absence of policies related to the drug smuggling and the extent of the Warden's leadership are matters properly addressed by a Rule 30(b)(6) deponent rather than a fact witness. In a Rule 30(b)(6) deposition, the deponent speaks for a government or corporate entity on the subjects of questioning and testifies "about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). By contrast, fact witnesses may testify about matters that are within their personal knowledge. The topic of an entity's official policy is a matter that is within the knowledge of an entity and therefore properly a subject addressed by a 30(b)(6) deposition rather than a fact witness's deposition. *See, e.g., Schoolcraft v. City of New York*, No. 10 Civ. 6005(RWS), 2014 WL 3952905, at *3 (S.D.N.Y. Aug. 12, 2014) (stating

that "[a] fact witness is an inappropriate witness for the questions" the plaintiff sought to ask about the New York Police Department's official overtime policy).

Additionally, these topics are not relevant to Plaintiff's claims in the operative Complaint. Nowhere in the operative Complaint does Plaintiff allege that he was harmed by the lack of policies or procedures related to drug smuggling. *See generally doc. 1*. Nor does the Complaint allege that Plaintiff was harmed by a lack of leadership on the part of the Warden about drug smuggling. *See generally id.*

The Court is unpersuaded by Plaintiff's argument that he can ask former employees of Defendant CoreCivic about their "firsthand knowledge . . . regarding whether inmates have access to drugs and if so, how," based on Count V of his Complaint, which alleges that "Defendants maintained unconstitutional policies, customs, or practices which were the legal and proximate causes of Plaintiff's injuries." *See doc. 83* at 17. Count V of Plaintiff's Complaint alleges that Defendants had a custom, policy, or practice, of "denying obviously necessary medical services to inmates at NWNMCC, including Mr. DeLayo." *Doc. 1* at ¶ 90. The Court finds any connection between a fact witness's personal knowledge about inmates' access to drugs or the Warden's responsibility to take leadership to prevent drug smuggling into NWNMCC and the claim that Defendants had a custom or policy of denying medical care to be too attenuated to support a finding that these are relevant topics. The Court therefore will grant the Motion as to these topics.

## IV. Conclusion

For the reasons set forth above, the Court will GRANT in part and DENY in part Defendant CoreCivic's Amended Motion for a Protective Order (*doc. 80*), as follows:

(i) The Motion is GRANTED as to Topic 1. The alleged trafficking of drugs into NWNMCC is not a permissible topic of deposition questions for fact witnesses.

(ii) The Motion is DENIED as to Topic 2. Plaintiff's Hepatitis C and associated cirrhosis of the liver, and the treatment he received for these conditions during the time period relevant to the Complaint, are permissible topics for deposition questions.

(iii) The Motion is GRANTED in part and DENIED in part as to Topic 3. To the extent Plaintiff's planned deposition questions regarding NWNMCC's accreditation pertain to the medical care provided to Plaintiff individually, they are permissible. To the extent Plaintiff's planned deposition questions instead focus on the number of inmates positive for Hepatitis C, the effect of the same on NWNMCC's accreditation, and the validity of the data recorded during the 2020 reaccreditation audit, they are not permissible.

(iv) The Motion is GRANTED as to Topic 4. The presence or absence of policies and procedures on the part of Defendant CoreCivic related to the trafficking of drugs into NWNMCC, and whether the Warden should have provided more leadership in a situation in which drugs were trafficked into the facility in the absence of clear policies and procedures, are not permissible topics of deposition questions for fact witnesses.

The Court further finds that an apportionment of expenses for the Motion pursuant to Fed. R. Civ. P. 37(a)(5)(C) is not justified based on the parties' attempt to resolve the dispute without recourse to formal motion practice. *See* Fed. R. Civ. P. 37(a)(5)(C); *doc. 74*.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE